IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **EDGAR CORTES-CASTILLO, et al.,** § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:21-CV-2093-BH |
| § | |
| **ONE TIME CONSTRUCTION TEXAS** § | |
| **LLC, et al.,** § | |
| Defendants. § | Consent Case[1] |

## MEMORANDUM OPINION AND ORDER

Before the Court is *Plaintiffs' Motion for Partial Summary Judgment*, filed June 6, 2022 (doc. 19). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

On September 1, 2021, Edgar Cortes-Castillo, Leonel Cortez-Suarez, Ivan Delgado-Valdez, and Ivan Delgado-Soriano (Plaintiffs), sued One Time Construction Texas LLC (One Time TX), One Time Construction, Inc. (One Time CA), and Shay Fretwell (collectively Defendants), for unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Texas Minimum Wage Act (TMWA), Texas Labor Code § 62 *et seq.*, for breach of contract, and for violations of the California Labor Code § 200 *et seq.*, and the California Business and Professions Code § 17200 *et seq.* (doc. 1 at 7-11.)[2] Defendants' answer asserts affirmative defenses and a counterclaim for breach of contract. (doc. 6 at 6-7.)

One Time CA was a business focusing on remodeling work in California that ceased

---

[1] By consent of the parties and order filed November 17, 2021 (doc. 14), this matter has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

operations in early 2019. (doc. 27 at 3-4.) Its annual gross volume of sales exceeded $500,000 for the years 2017, 2018, and 2019. (doc. 21 at 76.)  One Time TX, formed in January 2019, is a business that "acts as a construction manager and general contractor on new home construction" in Texas. (doc. 27 at 4.)  It grossed over $500,000 in sales in 2019 and 2020. (doc. 21 at 79, 85.) Fretwell is a member and manager of One Time TX, and he was the president of One Time CA. (doc. 27 at 3.)

Three of the plaintiffs had performed remodeling work for One Time CA in California before it ceased operations in early 2019. (docs. 21 at 76; 27 at 3-4.) The construction materials they used for that work, including electrical wire, plumbing pipe, AB drain lines, drywall, paint, and stucco, were purchased from Home Depot, and most of these materials were manufactured in China. (doc. 21 at 9-10.)  After Fretwell relocated to Texas in 2018, two of the plaintiffs expressed a desire to also relocate to Texas. (doc. 27 at 4.)

In early 2019, Plaintiffs subcontracted with One Time TX to work on the construction of a new home located in Walnut Spring, Texas. (*Id.* at 5.) They were the only subcontractors that worked on the initial window framing of the home. (*Id.*) Plaintiffs' work on the home "failed to meet minimum construction standards." (*Id.*) Specifically, the windows framed by Plaintiffs leaked, causing damage to the property, and there were numerous roof leaks. (docs. 21 at 11; 27 at 5.)  One Time TX had "to pay significant amounts of money [for] other contractors to repair the faulty work performed by the Plaintiffs." (doc. 27 at 5, 51.)  Fretwell never sent Plaintiffs a demand with a specific amount owed for damages they caused to the home. (doc. 21 at 12.)

In 2020, the owner of the home (Owner) sued One Time TX and the construction lender (Lender) in state court for damages in connection with Plaintiffs' construction work. (docs. 21 at 53-72; 27 at 5.) The state lawsuit was ultimately resolved, but One Time TX incurred legal fees, and

2

Lender "took quite a bit of money from [Fretwell] to settle." (doc. 27 at 5-6, 51.) Additionally, One Time TX's lending relationship with Lender "permanently ended, causing [it] to lose one of it's[sic] primary sources of construction funding and ultimately causing a decrease in business." (*Id.* at 6.) "None of these things would have happened had the Plaintiffs' workmanship met the generally accepted standards for this type of construction and had the home not experienced multiple leaks from the windows and roof." (*Id.*) At his deposition, Fretwell testified that he paid approximately $12,000 to repair leaks that resulted from Plaintiffs' failure to "waterproof up underneath the flashing properly," and that he was not paid $35,000 owed for other work performed. (*Id.* at 51.)

On October 1, 2021, One Time TX and Fretwell asserted a breach of contract counterclaim against Plaintiffs for damages proximately caused by their failure to perform as contracted. (doc. 6 at 7.) On June 6, 2022, Plaintiffs moved for partial summary judgment on the breach of contract counterclaim on the ground that there is insufficient evidence to establish the damages element. (doc. 19 at 1-2.) They also seek summary judgment that One Time CA was a covered employer under the FLSA from 2017 to 2019, and that One Time TX was a covered employer under the FLSA from 2019 to 2020. (*Id.* at 2.) Defendants responded on June 27, 2022, and Plaintiffs replied on July 11, 2022. (*See* docs. 26-29.)

## II. EVIDENTIARY OBJECTIONS

Plaintiffs object to Fretwell's sworn declaration on the grounds that it was not produced in discovery and should be excluded under Federal Rule of Civil Procedure 37(c)(1), and that it is a "sham affidavit." (doc. 29 at 2-3.)

**A.     Evidence Not Produced in Discovery**

"Rule 37(c) disallows the use of evidence in a hearing, trial or to support a motion if the evidence was not produced in discovery." *De La Garza v. City of Corpus Christi*, No. 2:13-CV-353,

3

2014 WL 12586753, at *4 (S.D. Tex. Nov. 5, 2014); *see* Fed. R. Civ. P. 37(c)(1) (stating that upon failure to do so, a "party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").

Courts considering this issue have found that declarations and affidavits "appearing to have been created for summary judgment purposes are not required to be disclosed during discovery (as they likely did not exist then)." *Dupee v. Klaff's Inc.*, 462 F. Supp.2d 233, 235 n.2 (D.Conn. 2006); *Danielson v. Huether*, No. 4:18-CV-04039-RAL, 2021 WL 217706, at *2 (D.S.D. Jan. 21, 2021), *aff'd by* No. 21-1556, 2022 WL 259455 (8th Cir. Jan. 28, 2022) (finding affidavits used to support motion for summary judgment, which were created after discovery had ended, were not untimely and "did not need to be disclosed before the discovery deadline" under Rule 37(c)); *Palma v. Pharmedica Commc'ns, Inc.*, CIV.3:00-CV-1128 (AHN), 2002 WL 32093275, at *2 (D.Conn. Mar. 27, 2002) (denying plaintiff's motion to strike affidavits attached to defendant's motion for summary judgment where it was "likely that the documents were created solely to support the summary judgment motion and would not have existed but for that motion"); *see also Burton v. Blue Cross & Blue Shield of Kansas City*, No. 13-2099-JTM, 2014 WL 3767683, at *2 (D. Kan. July 31, 2014) ("The plaintiff has presented no authority suggesting the requirement to timely disclose documents under Rule 26 somehow precludes a party from offering subsequently-obtained affidavits in support of a summary judgment motion."). This Court agrees. Because the declaration was created by Defendants for the purpose of opposing Plaintiffs' summary judgment motion, it could not have been disclosed before the discovery deadline, and this objection is overruled.

**B.   Sham Affidavit**

Plaintiffs next argue that Fretwell's declaration should be stricken as a "sham affidavit" because it conflicts with his prior deposition testimony. (doc. 29 at 3.)

"Under the 'sham affidavit' doctrine, a 'nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony.'" *Powell v. Dallas Morning News L.P.*, 776 F. Supp.2d 240, 247 (N.D. Tex. 2011) (quoting *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984)). "The inquiry, as a whole, is aimed at gleaning whether the later affidavit is 'so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham.'" *Sabre Indus. Inc. v. Module X Sols., L.L.C.*, 845 F. App'x 293, 298 (5th Cir. 2021) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).  Merely because there is a discrepancy between deposition testimony and the deponent's later affidavit does not require the court to disregard the affidavit. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894-95 (5th Cir. 1980); *see also Eure v. Sage Corp.*, 61 F. Supp.3d 651, 658 (W.D. Tex. 2014) (noting that the sham affidavit doctrine "is applied sparingly and may be invoked only where there is some inherent inconsistency between an affidavit and a deposition") (internal quotations and citation omitted).  "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (citing *Clark*, 854 F.2d at 766).

Plaintiffs contend that Fretwell's declaration "includes figures which were not mentioned during his deposition," even though he was "questioned about the nature and extent of his alleged damages amounts in his deposition and failed to give an accounting of what he was owed." (doc. 29 at 3.) They do not, however, identify the specific "figures" that conflict with his deposition testimony, or explain why the entire declaration should be stricken. *See* Fed. R. Civ. P. 103(a)(1); *Velasquez v. EAN Holdings, LLC*, No. 3:17-CV-1656-BH, 2018 WL 5924037, at *4 (N.D. Tex. Nov. 13, 2018) ("Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific

objections detailing the specific evidence it wishes to strike and stating the specific grounds for striking it."); *Shepherd v. Dallas Cnty., Tex.*, No. CIV.A. 3-05-CV-1442-D, 2008 WL 656889, at *6 (N.D. Tex. Mar. 6, 2008) (overruling objections because movant failed to point to inadmissible components). To the extent that Fretwell's declaration contains statements that conflict with his deposition testimony, those statements will not be considered. *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit).

Plaintiffs' objections to Fretwell's declaration are overruled.

### III.  MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If it "bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the

nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[3] Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

---

[3] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

A.  **Defendants' Breach of Contract Counterclaim**

Plaintiffs contend that they are entitled to summary judgment on the breach of contract counterclaim against them because Defendants "have failed to produce any evidence in discovery to substantiate the amount of damages incurred by [them] for [their] allegedly substandard work." (doc. 20 at 3.)

"The essential elements of a breach of contract claim in Texas[4] are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). Damages are "an essential element of a cause of action for breach of contract under Texas law," *Lexxus Intern., Inc. v. Loghry*, 512 F. Supp.2d 647, 666 (N.D. Tex. 2007), and "[t]he plaintiff bears the burden of demonstrating that he suffered a loss as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citing *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 617 (Tex. App.—Texarkana 2002, pet. denied)). In a breach of contract action, a party is generally entitled to recover the damages that occurred as a result of the breach. *See CQ, Inc. v. TXU Mining Co., LP*,

---

[4]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthodpedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the alleged agreement was for construction services at real property located in Texas. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance). Further, the parties appear to agree that Texas law governs the breach of contract counterclaim, as Plaintiffs cite to Texas law and Fifth Circuit cases applying Texas law and Defendants do not dispute the applicability of those cases. (*See* docs. 20; 28.); *see also CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.").

565 F.3d 268, 278 (5th Cir. 2009) ("The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained.") (citation omitted). "Although damages need not be established with mathematical precision, the evidence must provide a basis for reasonable inferences." *Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999).

Here, Plaintiffs argue that the summary judgment record is devoid of any evidence of the extent to which Defendants were allegedly harmed by them. (doc. 20 at 4-5.) They point to Fretwell's deposition testimony admitting that he never sent a demand for damages or completed a calculation of total damages incurred as a result of their construction work. (doc. 21 at 12.) This fails to show that Defendants will be unable to sustain their burden of proof on the damages element at trial, however. *See McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 207 (Tex. 1985) (citation omitted) ("Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery."). While Plaintiffs maintain that Defendants failed to produce any document in discovery that factually substantiated the damages they incurred as a result of their construction work, Fretwell testified at his deposition that it cost him at least $12,000 to fix damage caused to the home as a result of Plaintiffs' failure to properly waterproof underneath the flashing, that he did not get paid $35,000 owed for work performed on the home as a result of Plaintiffs' work, and that he spent money to defend and settle Owner's state lawsuit. (doc. 27 at 51.) This information is within Fretwell's personal knowledge and constitutes evidence of the amount of Defendants' contractual damages.

Because Plaintiffs have failed to demonstrate that there an absence of evidence to support the damages element of Defendants' counterclaim for breach of contract, their partial summary judgment motion is **DENIED** as to this claim.

B.     **Plaintiffs' FLSA Claim**

Plaintiffs move for partial summary judgment on their claims that One Time CA and One Time TX were covered employers under the FLSA. (doc. 19 at 2.)

The FLSA requires that employers pay covered employees at a rate of at least one and one-half times their regular rate for the hours an employee works in excess of a forty-hour workweek. *See* 29 U.S.C. § 207(a)(1). An employer who violates the overtime provisions of § 207 of the FLSA is liable to the affected employee for unpaid overtime compensation and, potentially, liquidated damages. *See id.* § 216(b). To establish a claim for unpaid overtime under the FLSA, a plaintiff must demonstrate that he was an employee "engaged in the production of goods for commerce ('individual coverage') *or* employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citation omitted and emphasis original); *see also* 29 U.S.C. § 207(a)(1).[5] "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis original).

In determining individual coverage, courts in the Fifth Circuit apply a "practical test," considering "whether [an employee's] work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam). "Work that is purely local in nature does not meet the FLSA's requirements, but any regular contact with commerce, no matter how small, will result in coverage." *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (internal brackets and quotation marks omitted).

As to enterprise coverage, the FLSA defines "enterprise engaged in commerce or in the

---

[5]"Commerce" under the FLSA is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

10

production of goods for commerce" as an enterprise[6] that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1)(A)(i)-(ii). "The first prong of the enterprise coverage definition can be met in one of two ways: (1) through the 'engaged in commerce' clause, which tracks the language used to determine individual coverage and can be analyzed in essentially the same manner;[7] or (2) the 'handling' clause, which requires separate analysis." *Landeros v. Fu King, Inc.*, 12 F. Supp.3d 1020, 1023 (S.D. Tex. 2014). To establish enterprise coverage under the handling clause, a plaintiff must show that the enterprise "had multiple employees 'handling, selling, or otherwise working on' goods [or materials] that have moved in interstate commerce." *Mendoza v. Detail Sols., LLC*, 911 F. Supp.2d 433, 441 (N.D. Tex. 2012) (quoting 29 U.S.C. § 203(s)(1)(A)(i)) (alteration added). "Courts have held that mere handling of goods or materials that have traveled in interstate commerce creates enterprise coverage." *Badon v. Berry's Reliable Res., LLC*, No. CV 19-12317, 2021 WL 2822252, at *3 (E.D. La. July 7, 2021) (citation omitted).

### 1. One Time CA

Plaintiffs argue that the summary judgment evidence conclusively proves that One Time CA

---

[6]"Enterprise" is defined, in part, as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor." 29 U.S.C. § 203(r)(1).

[7]"The difference is that in the individual coverage analysis, the question is whether the plaintiff himself engaged in interstate commerce, whereas in the enterprise coverage analysis, the question is whether any two or more of the business's other employees engaged in interstate commerce." *Mendoza*, 911 F. Supp.2d at 440 n. 4.

11

was an enterprise that engaged in commerce under the FLSA from 2017 through 2019. (doc. 20 at 7.) To meet their initial summary judgment burden, they point to One Time CA's admissions that its annual gross volume of sales exceeded $500,000 in 2017, 2018, and 2019, as well as its response to an interrogatory stating that some of the plaintiffs were employed by it in California during the relevant period. (doc. 21 at 76.) They also provide Fretwell's deposition testimony that most of the construction materials used by the employees that worked for him in California were manufactured in China. (*Id.* at 9-10.)

As noted, the FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and *any place outside thereof*." 29 U.S.C. § 203(b) (emphasis added); *see also Landeros v. Fu King, Inc.*, 12 F. Supp.3d 1020, 1024 (S.D. Tex. 2014) ( "In other words, the term pertains to interstate commerce.") (citing *Polycarpe v. E & S Landscaping, Inc.*, 616 F.3d 1217, 1221 (11th Cir. 2010)). In determining whether a good or material has traveled in interstate commerce for purposes of enterprise coverage under the FLSA, courts can rely on where an item was produced or manufactured. *See Polycarpe*, 616 F.3d at 1221; *White v. NTC Transp., Inc.*, No. 4:11CV007-SA-JMV, 2013 WL 5430512, at *3-6 (N.D. Miss. Sept. 27, 2013) (holding that undisputed evidence that vehicles used in the course of defendants' business were manufactured outside the state sufficiently established the interstate commerce prong of enterprise coverage on summary judgment); *Mateo v. TA HSIN, INC.*, No. 7:19-CV-419, 2021 WL 3931915, at *2-3 (S.D. Tex. Feb. 10, 2021) (finding allegations that certain goods and supplies handled by employees had been manufactured outside of Texas was sufficient for purposes of meeting the interstate commerce requirement for FLSA coverage under the handling clause); *Williams v. Hooah Sec. Servs. LLC*, No. 09-02376-STA-TMP, 2011 WL 5827250, at *11 (W.D. Tenn. Nov. 18, 2011) (granting armed guards' summary judgment as to enterprise coverage based

on their declarations that the weapons carried in performing their job duties were manufactured outside the state showed the handling of materials produced in interstate commerce).

The burden now shifts to Defendants to identify record evidence creating a genuine issue of material fact on this issue. They do not dispute Plaintiffs' evidence or otherwise refute their argument that One Time CA was an enterprise covered by the FLSA for the years 2017, 2018, and 2019. Although Defendants provide evidence that one of the plaintiffs never worked for One Time CA, this is irrelevant to the issue of whether One Time CA was an enterprise subject to FLSA coverage in 2017, 2018, and 2019. (*See* doc. 20 at 7-8.) Because no genuine issue of material fact exists as to whether One Time CA was an FLSA-covered enterprise from 2017 to 2019, Plaintiffs are entitled to summary judgment as a matter of law on this issue.

    2.    ***One Time TX***

Plaintiffs also argue that the summary judgment record proves that One Time TX is an enterprise that engaged in commerce under the FLSA in 2019 and 2020. (doc. 20 at 7.) They provide a copy of One Time TX's 2019 tax filings that show gross sales of $728,809, and an email from defense counsel stipulating that One Time TX grossed over $500,000 in 2020. (*See* doc. 21 at 79, 85.) They also point to the same deposition testimony to show that they handled goods manufactured outside of the United States while working for One Time TX, but this testimony concerns the handling of construction materials that were used for construction work performed in California. (*See id.* at 9-10.) While Plaintiffs have provided evidence that One Time TX's annual gross volume of sales meets the $500,000 threshold in 2019 and 2020, they fail to provide evidence that One Time TX employed more than one employee, and that its employees handled, sold, or worked on goods or materials that had traveled in interstate commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i). "This is fatal to [Plaintiffs'] enterprise coverage argument, because enterprise

13

coverage requires the court to find that an employer had multiple employees 'handling, selling, or otherwise working on' goods that have moved in interstate commerce." *Mendoza*, 911 F. Supp.2d at 441 (citing *id.*). Further, the FLSA expressly excludes enterprise coverage for "the related activities performed for such enterprise by an *independent contractor*," and whether Plaintiffs were employees or independent contractors of One Time TX is in dispute.[8] *See* 29 U.S.C. § 203(r)(1) (emphasis added). Because Plaintiffs have not met their burden of identifying evidence of record sufficient to establish enterprise coverage under the FLSA for One Time TX, they are not entitled to summary judgment on this issue.

## IV.  CONCLUSION

Plaintiffs' motion for partial summary judgment is **GRANTED in part** and **DENIED in part**, and they are entitled to summary judgment that One Time CA was an enterprise subject to FLSA coverage from 2017 to 2019.

**SO ORDERED** on this 15th day of September, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8] Although Defendants do not dispute that the plaintiffs who worked for One Time CA were employees, this issue is disputed with respect to One Time TX.